## THE PEOPLE v. WILLIAMS.

On trial for murder, a juror, when called for examination, stated that he heard as rumor what purported to be the facts of the case, but did not hear it from a witness, nor from one professing to have knowledge of the facts; and from what he heard, had "formed an opinion as to the guilt or innocence of the accused;" that he had no reason to doubt what he had heard, and believed it at the time, and if the facts turned out the same as he had heard them, his " opinion was formed :" Held, that, upon objection for implied bias, the juror was not disqualified.

People v. Reynolds (16 Cal.) cited.

On trial for murder—the crime, if any, being committed while defendant was attempting to collect a road tax from a Chinaman—defendant introduced a witness who testified that he had been engaged in collecting taxes in the county, whereupon defendant offered to prove by him that "it is a notorious fact that Chinese are in the habit of resisting forcibly the collection of taxes, and that all Collectors feel compelled to go armed for the purpose of resisting the assaults of the Chinese; and that it is a common practice for the Chinese to assault Collectors without provocation, and that Collectors have generally to procure others, as a matter of safety, to travel with them while in the discharge of their duties."   Objected to as irrelevant and ruled out: Held, that

the evidence was not properly presented, and that there was no error in reject-ing it in the form in which it was offered.

*Held, further,* that all the facts explaining the conduct of a party charged with crime should, as a general rule, be admitted in evidence.

In cases of homicide, malice, proved by pre-concert, going armed, etc., usually enters into the inquiry. To rebut this or any inference arising from the acts done, defendant may show why he was armed, upon what errand he went, and the like facts.

On trial for murder, the Court instructed the jury, that "The fact that the de-ceased was a Chinaman gave the defendant no more right to take his life than if he had been a white person; nor did the fact, if you so find, that the defend-ant was seeking to enforce the collection of taxes against another Chinaman, or even against his victim, give defendant any right to take his life. Our laws do not sanction the sacrifice of human life in order to enforce the collection of taxes or licenses:" *Held,* that the Court had no right to use the word "*victim*" as above, because it seems to assume that the deceased was wrongfully killed, which was the point in issue, and was calculated to prejudice the accused.

Courts, in their charges, should not directly or indirectly assume the guilt of the accused, nor use equivocal phrases which may leave such an impression.

Where on trial for murder defendant asked the Court to charge the jury: "If de-fendant inflicted the mortal wound in self-defense, and his danger was so urgent and pressing that in order to save his own life it was necessary that he should have inflicted such wound, then the jury must acquit," and the Court refused without assigning any reason: *Held,* that the Court had no right so to refuse; that if the refusal were based upon the ground that the same instruction had been already given, though in different language, then the Court should have distinctly informed the jury that this was the reason for refusing the instruc-tion.

When an instruction asked presents the law accurately, the Court ought always to give it in the very words asked—especially in criminal cases.

*People* v. *Harley,* (8 Cal. 390) and *People* v. *Ramirez* (13 Id. 172) approved.

APPEAL from the Eleventh District.

Indictment for murder. Defendant seems to have been collect-ing a road tax, and on going by appointment to the house of a Chinaman in Georgetown to collect his tax, got into a difficulty with deceased, another Chinaman, and shot him.

In empannelling the jury, a juror being examined stated that he had heard as rumor what purported to be the facts in the case, but not from a witness, nor from a person professing to have knowledge of such facts, and from what he had heard had "formed an opinion as to the guilt or innocence of the accused;" that he had no reason to doubt what he had heard, and at the time believed it; and if the

facts turned out the same as he had heard them, his "opinion was formed." The District Attorney challenged the juror for implied bias, and the Court excluded him, defendant excepting.

On the trial, defendant introduced as a witness one McKinney, who testified that he had been engaged in collecting taxes in the county, whereupon defendant offered to prove by the witness that it is a notorious fact that Chinese are in the habit of resisting forcibly the collection of taxes, and that all Collectors feel compelled to go armed for the purpose of resisting the assaults of the Chinese, and that it is a common practice for the Chinese to assault Collectors without provocation, and that they have generally to procure others to travel with them while in the discharge of their duties. Objected to as irrelevant and ruled out, defendant excepting.

Further facts appear in the opinion of the Court. Defendant, being convicted of manslaughter, appeals.

*John Hume*, for Appellant.

I. The juror rejected had stated that he "formed an opinion." This is not sufficient; the opinion must be "unqualified" to come within the statute.

II. The Court erred in excluding the testimony of McKinney.

III. The Court erred in giving the instruction to the jury in which deceased is spoken of as "*his victim.*" This language was calculated to prejudice the defendant before the jury as intimating the opinion of the Court.

IV. The Court erred in refusing the instruction asked, without assigning any reason for such refusal. (*People* v. *Ramirez*, 13 Cal. 172.)

*S. W. Sanderson, District Attorney*, for Respondent.

I. The juror was properly excluded. The statement that he had formed an opinion as to the guilt or innocence of the accused, and if the facts turn out the same as he had heard them, then his "opinion was formed," is in no way a qualified opinion, but is peremptory and certain, and therefore is an unqualified opinion. It is not necessary that the juror shall say that his opinion is an "un-

qualified " one, but if he has formed an opinion upon certain facts or statements which he has heard, it is as much an unqualified opinion as if the very word was used.

To leave it with the juror to say whether his opinion is an " unqualified " one or not, would be making him the judge of his own qualifications, which evidently was not the intention of our statute. (Wood's Dig. 296, art. 1614.)

It matters not what words may be used, if from what he stated it was clear he would not act with entire impartiality.  (*People* v. *Cottle*, 6 Cal. 227 ; *People* v. *Williams*, Id. 206 ; 21 Wend. 509 ; *People* v. *Bodine*, 1 Denio, 281 ; *Lohman* v. *People*, 1 Comst. 379 ; *State* v. *Spencer*, 1 Zabriske, N. J. 196 ; *Nelins* v. *State*, 13 S. & M. 500 ; *Sam* v. *State*, Id. 189 ; *Monroe* v. *State of Georgia*, 5 Geo. 85 ; *State* v. *Potter*, 18 Conn. 166 ; *State* v. *Webster*, 13 N. H. 491 ; *Pierce* v. *State*, Id. 536.)

II. As to the matter offered to be proven by McKinney.

The defense claim it to be important for two purposes—first to negative any presumption which might arise from the testimony of the prosecution that the defendant went to the place for the purpose of creating or engaging in a difficulty, and to remove the prejudice naturally produced upon the minds of the jury.

No such presumption could arise, for it is not warranted by the testimony ; he went there as he legally had a right to for the collection of taxes, and it has not been claimed by the prosecution or by any one that he went for any other purpose.

The second purpose of the defense is to explain the object of taking an assistant with him, by showing it to be for the purpose of protection instead of offense.

This as well as the former is irrelevant, as it does not support any of the issues raised, and it is not pretended that he went for any unlawful purpose.

III. The instruction given was directly in point, for the facts were that deceased was a Chinaman and that defendant went there to collect taxes, and we cannot understand how this would divert the attention of the jury from the true issue, or create a prejudice against the accused.

IV. There was no error in refusing the instruction asked for by

People *v.* Williams.

defendant. It amounts to nothing more than what had been already given by the Judge.

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

The defendant was convicted of manslaughter on an indictment for murder.

Several points are made:

1. As to the rejection by the Court of a juror. The exception does not seem to be properly taken, though the juror was not disqualified upon objection for implied bias, as we held in the case of *People* v. *Reynolds* at the last term. In that case we laid down the rules governing this whole matter; and by an observance of them no difficulties need be experienced on the subject.

2. The exclusion of the proof as to the habit of the Chinese in resisting the collection of taxes. This matter was not properly presented as it is stated in the record, and was accompanied with a proposal to prove mere inferences or conclusions of the witness. Perhaps there was no error in rejecting this proffered proof in the form in which it was offered. But we think that all the facts explaining the conduct of a party charged with crime, should, as a general rule, be admitted. In cases of homicide, malice proved by pre-concert, going armed, etc., usually enters into the inquiry. To rebut this or any inference arising from the acts done, the defendant might show why he was armed, upon what errand he went and the like facts. For example, a party might account for wearing a pistol by the nature of his business (as a Deputy Sheriff) or his going on a road infested with robbers. The circumstances might or might not be of much weight, but the defendant would be entitled to introduce them. (*People* v. *Arnold*, 14 Cal.)

3. The next point is that the Court charged the jury, that: "The fact that the deceased was a Chinaman gave the defendant no more right to take his life than if he had been a white person; nor did the fact, if you so find, that the defendant was seeking to enforce the collection of taxes against another Chinaman, or even against his victim, give the defendant any right to take his life.

People *v.* Williams.

Our laws do not sanction the sacrifice of human life in order to enforce the collection of taxes on licenses."

" Before you can acquit the defendant on the ground of necessary self-defense, it must appear as I have already told you, that the danger was so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily harm, the killing of the deceased was absolutely necessary, and it must also appear that the defendant had really and in good faith endeavored to decline any further struggle before the fatal shot was fired. Unless these things appear, your verdict should be guilty of murder or manslaughter, according to the circumstances."

The word *victim*, in the connection in which it appears, is an unguarded expression, calculated, though doubtless unintentionally, to create prejudice against the accused. It seems to assume that the deceased was wrongfully killed, when the very issue was as to the character of the killing. We are not disposed to criticise language very closely in order to reverse a judgment of this sort, but it is apparent that in a case of conflicting proofs, even an equivocal expression coming from the Judge, may be fatal to the prisoner. When the deceased is referred to as " a victim," the impression is naturally created that some unlawful power or dominion had been exerted over his person. And it was nearly equivalent, in effect, to an expression characterizing the defendant as a criminal. The Court should not, directly or indirectly, assume the guilt of the accused, nor employ equivocal phrases which may leave such an impression. The experience of every lawyer shows the readiness with which a jury frequently catch at intimations of the Court, and the great deference which they pay to the opinions and suggestions of the presiding Judge, especially in a closely balanced case, when they can thus shift the responsibility of a decision of the issue from themselves to the Court. A word, a look, or a tone may sometimes, in such cases, be of great or even controlling influence. A Judge cannot be too cautious in a criminal trial in avoiding all interference with the conclusions of the jury upon the facts; for of this matter, under our system, they are the exclusive judges. We are far from intending any reflection upon the learned Judge below by these observations; but the importance of the question and the

undesigned expressions noticed, suggest the propriety of making them.

4. After the general charge given by the Court, the defendant's counsel requested this instruction: " If defendant inflicted the mortal wound in self-defense, and his danger was so urgent and pressing, that in order to save his own life it was necessary that he should have inflicted such wound, then the jury must acquit." This charge was refused, but no reason was given by the Court for the refusal. It is not denied that the instruction was legal ; but it is said that there was no error in refusing it, because the Court had already given the same instruction, though in different language. It is always better for the Court, when an instruction presents the law accurately, to give it, especially in criminal cases, in the very words asked. The reason of this is, that counsel argue their case to the jury with reference to the law as announced in their own language. They select words to convey as precisely as they can the very idea and meaning they seek to impress. A change of phraseology, therefore, may render the legal proposition less intelligible or less emphatic. Counsel may desire a proposition to be given in different forms, in order that it may be more clearly understood. If the Court refuses a charge once clearly given, on the ground that it has already given it in different terms, it should inform the jury distinctly that this is the reason for the refusal, else prejudice and misunderstanding may result. The jury may infer that the instruction was refused on its merits. But this is not an open question in this Court. It was decided in the case of *People* v. *Harley*, (8 Cal. 890) affirmed in *People* v. *Ramirez* (13 Cal. 172).

We are not to be understood as holding that the mere refusal of the Court to instruct in the language asked, the instruction having been given in substance, or that the mere refusal to repeat an instruction before given, in the same or different language, would be ground for reversal. We simply hold, that if the Court refuses a proper instruction in a criminal case, it is no answer to the error assigned for this cause, that an equivalent one was before given, unless this reason be assigned at the time for the refusal.

For this last error, judgment reversed and cause remanded.