PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUAN ESTRELLA, Defendant and Appellant.

No. 4603. Argued June 6, 1933.—Decided July 19, 1933.

*Arturo Aponte* for appellant. *R. A. Gómez, Fiscal,* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

Juan Estrella, charged with voluntary manslaughter, was found guilty by a jury and sentenced by the District Court of Humacao to seven years' imprisonment in the penitentiary. According to the information, the said Juan Estrella wilfully and upon a sudden quarrel unlawfully killed Matilde López, a human being, by inflicting a wound on his neck with a cutting instrument which caused his death.

Feeling aggrieved by the judgment of conviction rendered, the defendant took the present appeal, and has assigned several errors claimed to have been committed by the lower court in giving its instructions to the jury. The first assignment relates to the instruction of the court regarding the supposed flight of Juan Estrella. It is claimed that there was no evidence of a flight but that the court, nevertheless, gave to the jury the following instruction:

"One witness testified that the defendant fled when Matilde López fell down wounded. The court instructs the gentlemen of the jury that this, in itself, does not show the existence of a fact, but it must or may be taken into consideration by the jury for the purpose of judging the entire situation as it existed at the time of the occurrence, since it is difficult to think that a person who is free from all blame should flee, when it is more probable, more believable, and more reasonable that it is the guilty person who would flee; unless there be other circumstances or something that may have exerted an influence upon said person forcing him to act, independently of his guilt, in fleeing; a situation which must be considered and determined by the jury in connection with said testimony."

The defense is right in so far as the evidence is concerned. No witness testified that the defendant had fled. We have carefully examined the testimony of the witnesses and we have only found the evidence which we shall presently mention, and which, in our opinion, can not be considered as a flight nor justifies the instructions given by the lower court

to the jury. Santos López, a brother of the deceased, was asked what had happened to Matilde, and he answered:

"He fell down this way, sideways, and then I yelled: 'Oh, they have killed my brother.' (Q.) What did Juan Estrella do? He went as if towards the house, for this happened in the yard (*batey*)."

It is well to keep in mind that the killing took place in the yard of a house where people were dancing.

The witness Tiburcio López, also a brother of the deceased, testified that he struck Juan Estrella twice in the head with a stick, and that then went away without saying where. On cross-examination by the defense, he testified that he did not know whether the defendant was wounded in the neck, because he left and did not see him.

This is the only evidence that may have led the lower court to incorrectly state that there was a witness who testified that the defendant had fled. Nevertheless, even though we are bound to acknowledge that the said instruction should not have been given to the jury, the truth is that in the instant case, due to the character of the evidence, we fail to see that any right of the defendant has been substantially prejudiced. Juan Estrella is charged with having killed Matilde López upon a sudden quarrel. The evidence for the prosecution tends to show that, on or about the last day of the year 1930, at about eleven o'clock in the evening, a group of persons were walking towards the house of Juan López with the intention to spend a few hours there dancing and singing. Some of the persons composing the group entered the house while others remained in the yard. Subsequently Matilde López arrived. When the defendant saw him he went towards him and after calling him a "scoundrel," attacked him inflicting a wound on his neck, as a result of which he died. The testimony of the defendant tends to show that Matilde López arrived cheering for the New Year and saying: "What banditry is going on there?"; that Flor López, a brother of Matilde, answered: "Here you are,

again with your impudence (*pocas vergüenzas*)," and struck him with a stick; that Matilde turned towards Flor and collided with the witness, and that then they began to struggle; that when Matilde grappled with him he had a weapon in his hand and wounded the witness in the neck; that the latter seized him but was wounded again in the hand; that he received three wounds, and that Matilde had a razor in his hand; that the witness was stronger than Matilde and subdued the latter, and upon doing so he attempted to break loose; that as the witness had more strength, he succeeded in seizing the hands of the deceased, but that he released his hold when he was wounded; that they slipped and that it seems that it was then that the deceased wounded himself; that the witness was unarmed.

This is the evidence for the defense, the testimony of the defendant himself. The wound inflicted upon Matilde López was, according to the testimony of the physician who performed the autopsy, nine inches long and it extended almost from one shoulder to the other. By his testimony the defendant seems to have attempted to convey the idea that the deceased was wounded during the struggle when the instrument came close to his body and "I fastened my hands upon his." Later, in answer to questions asked by the defense counsel, he stated that they slipped during the struggle and that it seems that it was then that the deceased wounded himself. The jury did not believe the witness. It is not to be supposed that they would have reached a different conclusion if the instruction regarding the existence of a witness who stated that the defendant fled had not been given. The evidence as a whole leads us to believe that the jury would have reached the same conclusion in the absence of the instruction erroneously given by the court. According to the law, this court will not reverse the judgment of the lower court unless the error appearing from the record is one which tended to prejudice the rights of either party, and was duly excepted to in the lower court. Apart from the fact that we

do not think that any substantial prejudice was caused to Juan Estrella by the instruction given to the jury regarding his supposed flight, we are of opinion that the defense should have called the attention of the lower court to this error in order to afford that court an opportunity to correct the same.

It is true that the defendant excepted generally to all the instructions; but it is no less true that he pointed out specifically certain instructions given, and that he failed to make any mention of the remark of the court attributing to a witness the statement that the defendant had fled. The lower court, therefore, was not given an opportunity to correct the mistake, in accordance with the repeated decisions of this court as summarized in the case of *People* v. *Maldonado,* which we have recently decided (*ante,* p. 405).

Blashfield, in his work "Instructions to Juries," vol. 1, p. 795, says that it is a general rule that errors predicated upon instructions will not be considered on appeal unless first called to the attention of the lower court. The reason of the rule is to afford the trial court an opportunity to correct any error incurred by it through inadvertence, thus obviating the delay and expense of an appeal, and to prevent a party from speculating on the chances of a verdict in his favor notwithstanding the error, knowing the meanwhile that a verdict and judgment against him could be reversed. The proper way to save the objections intended to be made on appeal is by calling the attention of the lower court to the errors claimed in order that it may correct them. If it insists on the instruction as given, then the party should take an exception. This rule, according to Blashfield, is applicable both to civil and criminal cases. In Puerto Rico the Supreme Court has established the rule to be followed, in accordance with the law regarding the reversal of verdicts in criminal cases, approved May 30, 1904. The first assignment of error is dismissed.

The defense urges that the lower court erred in referring in its instructions to the deceased as the "victim," and in

support of this contention there is transcribed a paragraph
of an opinion rendered by the Supreme Court of California
in the case of *People* v. *Williams,* 17 Cal. 142, 147, which
reads as follows:

"The word *victim*, in the connection in which it appears, is an
unguarded expression, calculated, though doubtless unintentionally,
to create prejudice against the accused. It seems to assume that
the deceased was wrongfully killed, when the very issue was as to
the character of the killing. We are not disposed to criticise lan-
guage very closely in order to reverse a judgment of this sort, but
it is apparent that in a case of conflicting proofs, even an equivocal
expression coming from the Judge, may be fatal to the prisoner.
When the deceased is referred to as 'a victim', the impression is
naturally created that some unlawful power or dominion had been
exerted over his person. And it was nearly equivalent, in effect,
to an expression characterizing the defendant as a criminal. The
Court should not, directly or indirectly, assume the guilt of the
accused, nor employ equivocal phrases which may leave such an
impression. The experience of every lawyer shows the readiness
with which a jury frequently catch at intimations of the Court, and
the great deference which they pay to the opinions and suggestions
of the presiding Judge, especially in a closely balanced case, when
they can thus shift the responsibility of a decision of the issue
from themselves to the Court. A word, a look, or a tone may some-
times, in such cases, be of great or even controlling influence. A
Judge cannot be too cautious in a criminal trial in avoiding all
interference with the conclusions of the jury upon the facts; for
of this matter, under our system, they are the exclusive judges. We
are far from intending any reflection upon the learned Judge below
by these observations; but the importance of the question and the
undesigned expressions noticed, suggest the propriety of making
them."

In the California case, the trial court called the deceased
"his victim," as if he had been the victim of the defendant.
In the instant case, the court referred to the struggle had
by Juan Estrella with "the victim," and it repeated those
words in reviewing the evidence of the defense and in refer-
ring to the fight between the defendant and Matilde López.
There is some difference between both instructions. In the

California case there was used the expression "his victim," that is to say, the victim of the defendant; in the instant case the word "victim" only was used. We are quite far from approving the employment of this term. We think that the lower court used it without any intention to arouse prejudice against Juan Estrella. The word "victim," in its general sense, does not imply guilt or criminal intent on the part of the author of the act causing death or great bodily injury to the person so designated. Said term is frequently used to designate persons who have been sacrificed or seriously injured by an event brought about by the hand of man or by any force lacking his intervention. We call "victims" the human beings sacrificed by an earthquake, a cyclone, or a flood, and we also frequently say that a person is a victim of himself or of circumstances, and sometimes we even apply such designation to a person who has suffered a misfortune or been subjected to grave mental distress. As we have already stated, we agree that the lower court should not have used this word in its instructions, but we can not consider such use as a fundamental error justifying a reversal of the judgment. In the case of *People* v. *Williams, supra,* the judgment was not reversed because the lower court had used the word "victim." The appellate court specifically stated that it revoked the judgment of the lower court because of the last error analyzed in the opinion delivered in that case, which referred to the refusal of the court to submit to the jury an instruction requested by the defendant.

The third error assigned is that the lower court, in giving to the jury a summary of the evidence for the prosecution, omitted the testimony of the witness Basilio Delgado. In his instructions the judge did not mention specifically or separately the testimony of each witness. He reviewed the evidence generally. He said nothing, however, regarding the testimony of Basilio Delgado, who stated that Matilde López had arrived uttering cheers for the New Year, and that Flor, his brother, said: "There comes Matilde, in his

cups, as usual''; that Matilde attacked Flor, and the latter slipped behind Juan Estrella, and then Matilde and Juan began to struggle. This witness had testified before the justice of the peace, and in his previous statement he did not mention Flor López and, consequently, made no reference to any interchange of offensive words between him and his brother Matilde. He then stated that Matilde López arrived shouting cheers for the New Year and that an ‧argument between him and Juan Estrella ensued, then a fight started between Matilde and Juan, and the witness heard the voice of Santos López saying: ''They have killed my brother''; that he saw both of the wounded men, and that he did not see any weapon in the hands of Matilde. We are of opinion that if the defense thought that the testimony of Basilio Delgado might benefit the accused, it should have requested the court to instruct the jury regarding the testimony of this witness. The instructions given to the jury should not ignore or exclude any of the issues, theories, or defense raised by the pleadings and the evidence. However, we think that if the defense adopts a passive and silent attitude, without calling the attention of the court in order that it may supply the omissions incurred by it, the judgment rendered should not be reversed, unless there be involved a fundamental question which substantially injured the rights of the defendant.

It is urged that the court erred in instructing the jury incorrectly on the subject of self-defense. The instruction giving rise to this assignment of error, reads thus:

''The court desires to inform the gentlemen of the jury that for self-defense to be available it is necessary that the person who kills should entertain a reasonable belief that he is going to die if he does not kill, or that he will receive great bodily injury, or is in inminent danger thereof; but a mere suspicion does not justify the plea of self-defense. It is necessary that such danger should actually exist and that the person who sets up self-defense in his favor, should also believe that the danger exists and if he entertains such belief he should use no more force than is necessary to avert the danger. Of course, before killing he is under an obligation to

resort to all the means available to him to avoid killing his adversary without it being necessary that he should run or flee, but any means at his disposal, short of killing the other person, should first be put into practice by the person relying on the plea of self-defense before he is legally authorized to kill; and he should only kill in self-defense when all the means available to avoid such killing have been put into practice. In order to judge this circumstance, to judge this fact, the jury should take into account all the facts and circumstances of the case.''

It is argued that according to the language of the judge, in order to justify the plea of self-defense two circumstances are necessary: first, that the danger should really exist, it not being sufficient that such danger be merely apparent, but it must be actual and present; and second, that the accused should not act until all the other means have been resorted to. The court in its instructions stated that for self-defense to be available it is necessary that the person who kills should entertain a reasonable belief that he is going to die if he does not kill, or that he will receive great bodily injury, but it subsequently added that it is necessary that the danger should actually exist. Even though the defense may be right in its objections to the instruction given by the court to the jury on the question of self-defense, we think that this instruction lacks the importance attributed to it in this case, where the defendant, far from admitting that he killed Matilde López, testified that he had no weapons and that Matilde injured himself when during the struggle his own razor came close to his body and they slipped, and apparently it was then that he was wounded. This is not the case where a person claims to have killed another in self-defense because he thought himself in imminent danger of death or great bodily harm. The defendant in his testimony does not rely, as a ground for defense, on the real or apparent danger inasmuch as he does not admit having killed. The testimony of the defendant would have relieved him from responsibility had it been believed by the jury, since his statements tended to show that he was not the killer of Matilde López. The

jury, however, having weighed the evidence introduced rendered a verdict of guilty.

It is finally urged that the court in giving its instructions to the jury acted with passion, prejudice, and partiality, against the defendant. The charge of the lower court to the jury is not a model one. Some mistakes were made and we have pointed them out in this opinion. However, after a study of the instructions as a whole, we do not think that the lower court acted under the influence of passion, prejudice, or partiality.

The judgment appealed from should be affirmed.