Filed 1/11/22  P. v. Madding CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C093253 |
| Plaintiff and Respondent, | (Super. Ct. No. 18FE000934) |
| v. | |
| MICHAEL DAVID MADDING, | |
| Defendant and Appellant. | |

A jury found that defendant Michael David Madding robbed and attempted to kidnap Valeria after their vehicles collided on a dark, rural road.  On appeal, defendant argues (1) the trial court erred by denying his motion for new trial based on ineffective assistance of counsel; (2) the trial court erred by refusing to instruct the jury on citizen's arrest; (3) there is insufficient evidence to support defendant's robbery conviction; and (4) defendant was prejudiced by references to Valeria as "the victim" at trial.  Concluding defendant's contentions lack merit, we affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The facts*

One night, Valeria drove home from work down a quiet, rural road.  Valeria had a tote bag in her car containing her work binder, wallet, and headphones.  Her car key was in the ignition and was on a lanyard with about seven keys.  Out of nowhere, Valeria saw red lights, slammed on her brakes, and rear-ended a car "pretty intensely."  Valeria pulled over and began looking for her driver's license and insurance.  She saw a man, later identified as defendant, in the front seat of the other car.

Defendant waited for about a minute, drove off, but then returned several minutes later and pulled up next to Valeria's car.  He rolled down his window and was "clearly upset."  He began yelling at Valeria, asking whether she had insurance.  Valeria assured him she had insurance, but defendant was very angry and agitated.  He shouted profanities and accused Valeria of destroying his car.  She turned her car around and parked behind defendant's car so they could exchange information.

Once Valeria parked her car, defendant came up to her window and continued to angrily yell at her for hitting his car.  He demanded that she give him money, and when she told him she had no money, he got more upset and called her a liar.  Valeria was afraid.  Defendant opened her driver's side door.  Valeria thought defendant was going to hurt her.  He continued to yell at Valeria, demanding money, and when she apologized and said she did not carry cash, he again called her a liar.  Defendant reached into his pocket and made a "jabbing motion."  Assuming it was a knife, Valeria flinched and turned away, though she did not actually see a knife.

Defendant shouted at Valeria and accused her of trying to leave.  He aggressively grabbed her left upper arm, pulled her out of the car, and threw her onto the pavement.  She hit the ground so hard that she felt gravel pierce her skin.  Defendant reached into Valeria's car and grabbed her tote bag, digging through it, as Valeria, while still on the

2

ground, began to cry. Although Valeria was not trying to leave, defendant continued shouting that she was trying to leave.

Defendant grabbed Valeria's upper arm again and dragged her to the passenger side of his car. Her legs dragged along the ground but eventually she was able to stand up. Defendant still had Valeria's tote bag. Defendant pulled Valeria to the passenger side of the car, where the passenger door was open. He said, "Get in the car."

Valeria thought defendant was trying to take her. She somehow broke free from his grasp and ran. Valeria ran into a nearby orchard and fell into a ditch. She saw defendant running towards her, so she got up and ran further into the orchard. Valeria ran as far and as fast as she could. Once she was sure defendant was not following her, she called her friend, whose husband, Detective Nicholas Davison, was a Concord police officer who lived in the area. Valeria believed that he would be able to find her more quickly than anyone else. On the phone, Valeria sounded very terrified, frantic, and out of breath. She said, "I need help. Please help me. Someone is chasing me. There's a man with a knife." She told her friend where she was located and Detective Davison immediately left to find her. Before he left, he told his wife to call the police.

Valeria tried to make phone calls to her aunt to warn her that defendant had her tote bag with her wallet containing her address and might show up while her grandma was home alone, but the service was bad and her calls kept dropping. When she reached a fruit packing shed, a 911 dispatcher finally connected with Valeria after several of their calls had dropped. At that point, Valeria hid in a bush. While she was hiding, Valeria heard a car approaching and saw it turn off its lights. She saw that it was defendant's vehicle. Valeria ran toward the center of the orchard. Her call with the 911 dispatcher dropped. Valeria covered herself with leaves and hid under a tree. She was too scared to move.

In the meantime, Detective Davison had located Valeria's car and saw that its driver side door was wide open. He noticed a square handbag on the ground and also saw

3

an ID, credit cards, and gift cards on the ground. Additional credit cards were also scattered on the driver's seat and floorboard. He did not see car keys. California Highway Patrol officers Chad Wood and James Young arrived at the scene, and Detective Davidson briefed them on the situation. They saw Valeria's car had minor to moderate front-end damage. Officers Wood and Young began searching for Valeria.

From under the leaves, Valeria saw bright lights that she knew could not be defendant. She ran towards them and saw Officers Wood and Young. She looked terrified, was crying, trembling, and had suffered scrapes and bruises. The officers took Valeria back to the scene of the accident. On the way, they saw defendant's vehicle. On the floorboard of defendant's car, Officer Wood found a receipt from the cosmetics store where Valeria worked. Valeria identified the receipt as one she had printed out after work that day and put into her work binder, which she kept in her tote bag.

The trio returned to Valeria's car, where Valeria spoke with Deputy Patrick Walker of the Sacramento County Sheriff's Department. She seemed very upset and stressed. She told Deputy Walker that a man yanked open her car door, dragged her on the ground, and she got up and ran away. Valeria said she had both a tote bag and a purse in the car, and that the man rifled through the purse. She also said her tote bag was in the car when she ran away and that she did not know where it was located. Valeria told Deputy Walker there were no weapons involved and did not mention any suspected knife. At trial, Valeria testified that when she spoke to Deputy Walker, she was scared, stressed, and wanted to go home following such a traumatic event. As a result, she forgot to tell Deputy Walker that defendant had also tried to put her in his car.

Detective Davison drove Valeria home. She appeared to be in shock. During their drive, Valeria explained to Detective Davison that she tried to get out her insurance card for defendant, but defendant was not interested in insurance information and only wanted money. She said he was extremely angry, ripped her purse from her hands, threw her on the ground, and dragged her towards his car. Detective Davison said he found a tote bag

4

in Valeria's car, which he believed someone returned to her, because he thought she had it when they were driving home.

Valeria testified she did not have her tote bag on the ride home with Detective Davidson. She left her keys in the car when she ran into the orchard, but does not recall leaving them in the ignition. Valeria's tote bag, binder, and keys were all missing after the incident and she never recovered them. She assumed defendant took her keys because he did not want her to leave. The officers found her wallet, ID, credit cards, gift cards, and various papers at the scene, which were returned to her.

Later, when she was calm and safe at home, Valeria remembered the evening's events "pretty clearly." At that time, about 20 minutes after returning home, Valeria spoke to an officer on the phone and told him that defendant had dragged her a second time.

The following day, Valeria called the sheriff's department for an update. She said she also wanted to add information, explaining that she was "really frazzled" the previous evening and "didn't realize a part that [she] missed" until she was at home, spoke to her grandma, and was "a little bit calmer." She said that she had forgotten to tell the officers that defendant "was trying to, like, force [her] into his car, like, he was trying to take [her] with him."

Valeria later identified defendant in a photo lineup. Officer Wood interviewed defendant, who said a girl drove into his car so hard that his car was not drivable. According to defendant, she said she had no money or insurance. Defendant was "pissed off" and told her, "[L]ook what you fuckin' did to my car." He told Officer Wood, "I tried to get as much stuff [as] I could out of my car and get out of there 'cause I didn't wanna hang out. I was just upset." Defendant left his car and walked home. When Officer Wood asked why he left the scene of the accident without exchanging information, defendant said it was because he was upset. Defendant stated he did not know why he did not call the police.

5

B.  *The verdict and sentencing*

A jury found defendant guilty of attempted kidnapping (Pen. Code, §§ 664/207, subd. (a))[1] and second degree robbery (§ 211).  In a bifurcated trial, the trial court found true that defendant had prior serious felony convictions (§ 667, subd. (a)) for kidnapping (§ 207, subd. (a)) and assault with a deadly weapon inflicting great bodily injury (§§ 245, subd. (a)(l), 12022.7, subd. (a)), and two prior convictions for rape (§ 261), all of which qualified as strikes.  (§§ 667, subd. (e)(2), 1170.12, subd. (c)(2).)  After denying his motion for a new trial, the trial court sentenced defendant to an aggregate term of 50 years to life.

## DISCUSSION

### I

### *New Trial Motion*

Defendant contends that the trial court abused its discretion by denying his motion for new trial, which argued multiple instances of ineffective assistance of counsel.  He further asserts that the trial court failed to conduct an adequate inquiry into his claims by declining to hold an evidentiary hearing on the motion.  We find no merit to defendant's claims.

A.  *Additional procedural background*

Following the jury's verdict, defendant moved for a new trial based on ineffective assistance of trial counsel.  In relevant part, defendant argued that his trial counsel (1) failed to object to improper expert testimony from several law enforcement officers; (2) failed to introduce a photograph of a key in the ignition of Valeria's car into evidence; and (3) failed to request a jury instruction on a claim-of-right defense.  On reply, defendant requested an evidentiary hearing.

---

[1]     Undesignated statutory references are to the Penal Code.

6

Following oral argument, the trial court denied the motion and the request for an evidentiary hearing. It suggested that the photograph of the key may not have been admissible due to lack of foundation and relevance, and reasoned that defense counsel either did not know about the photograph or chose not to use it because he "realized it was essentially irrelevant since the photograph showing a key in the ignition took place at a different time and place than the crime itself took place." The trial court further concluded that even if the other issues raised by defendant were objectionable or fell below the standard of care, there was not sufficient evidence to show a reasonable probability that the outcome would have been different.

B.      *Applicable legal principles*

"Although ineffective assistance of counsel is not among the grounds enumerated for ordering a new trial under [ ] section 1181, motions alleging ineffective assistance are permitted pursuant to 'the constitutional duty of trial courts to ensure that defendants be accorded due process of law.' " (*People v. Callahan* (2004) 124 Cal.App.4th 198, 209, quoting *People v. Fosselman* (1983) 33 Cal.3d 572, 582 (*Fosselman*).)

"To make out a claim that counsel rendered constitutionally ineffective assistance, 'the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different.' [Citation.] To make out an ineffective assistance claim on the basis of the trial record, the defendant must show '(1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding.' [Citation.]" (*People v. Hoyt* (2020) 8 Cal.5th 892, 958 (*Hoyt*).)

7

"The trial judge is the one best situated to determine the competency of defendant's trial counsel. Where, as here, defendant is represented by different counsel at the motion for a new trial and the issue is called to the trial court's attention, the trial judge's decision is especially entitled to great weight and we defer to his fact finding power." (*People v. Wallin* (1981) 124 Cal.App.3d 479, 483.) " ' " ' "We review a trial court's ruling on a motion for a new trial under a deferential abuse-of-discretion standard." [Citations.] " 'A trial court's ruling on a motion for new trial is so completely within that court's discretion that a reviewing court will not disturb the ruling absent a manifest and unmistakable abuse of that discretion.' " ' " ' [Citation.]" (*Hoyt, supra*, 8 Cal.5th at p. 957.)

C.    *Analysis*

1.    *Deputy Walker's testimony*

Defendant first argues defense counsel was ineffective for failing to object to Deputy Walker's testimony that property taken "from inside the vehicle would be from her person."[2] His contention relies on *People v. Torres* (1995) 33 Cal.App.4th 37, which held that a witness—in *Torres*, a police officer—may not opine as to the definition of a crime, a defendant's guilt or innocence, or whether a crime has been committed. (*Torres, supra*, at pp. 45-48.) However, *Torres* concluded that although trial counsel was deficient in failing to object to the officer's testimony, the error was harmless. (*Id.* at pp. 48-52.)

Here, too, even assuming counsel had no rational tactical purpose in failing to object, defendant fails to show resulting prejudice. Deputy Walker did not opine that defendant was actually guilty of robbery, but rather provided his view that property inside

---

[2]    According to Deputy Walker, Valeria reported that property was taken "from her person." He explained, "She is in control of the vehicle. When she's inside the vehicle, property was taken when she was inside the vehicle. I would say that's from her person."

Valeria's vehicle was "from her person." However, the jury was properly instructed that robbery requires, in part, that "[t]he property was in the possession of another person" and "[t]he property was taken from the other person or his or her immediate presence." (CALCRIM No. 1600.) The jury was further instructed how to determine whether a person "possessed" something and whether property was "within the person's immediate presence." We presume the jury followed their instructions (*People v. Prince* (2007) 40 Cal.4th 1179, 1295), which would negate any possible prejudicial effect from Deputy Walker's testimony. Thus, it is not reasonably probable the outcome would have been different had counsel objected.

2.      *Photograph of key*

Next, defendant argues defense counsel prejudicially erred by failing to introduce a photograph of a key in the ignition of Valeria's car into evidence. The photograph, he contends, would have refuted the prosecution's theory that defendant stole the car key to prevent Valeria from escaping. However, defense counsel could have rationally decided it was useless to seek its admission. Valeria testified that her car key was on a "tealish blue" lanyard with the cartoon character from "Rocco's Modern Life" that held approximately seven keys. The key in the photograph was a single key with a rectangular tag. The photograph was taken on an unknown date, after the car was impounded, and without evidence as to what happened in the interim. Thus, defense counsel could have reasonably concluded that the key in the photograph was not the missing car key and therefore irrelevant. And because the photograph lacked probative value, it is not reasonably probable that defense counsel's failure to seek its admission affected the jury's verdict.[3]

---

[3]      In footnotes, defendant raises two separate arguments that (1) the prosecutor committed misconduct by suggesting Valeria would have driven home if defendant had not taken her keys, and (2) the People's opposition to the new trial motion improperly

9

### 3. *Claim-of-right instruction*

Defendant contends his counsel was ineffective for failing to request a claim-of-right instruction, which he argues could explain why he demanded money and took Valeria's receipt. This proposed instruction would have told the jury that if defendant took Valeria's property with a good faith belief that he had a right to the property, he lacked the criminal intent required for robbery. (*People v. Tufunga* (1999) 21 Cal.4th 935, 938.) Defendant argues that with this instruction, the jury could have considered the theory that he kept Valeria's receipt to ensure he could later contact her to pay for his vehicle's damage.

The trial court may only give a jury instruction if it is supported by substantial evidence. (*People v. Panah* (2005) 35 Cal.4th 395, 484.) Trial counsel is not ineffective for failing to request a jury instruction to which the defendant is not entitled. (See *People v. Dennis* (1998) 17 Cal.4th 468, 541.)

As substantial evidence does not support a claim-of-right instruction, we cannot conclude that defense counsel was deficient for failing to request it. There is simply no evidence defendant kept Valeria's receipt because he wanted her contact information to later seek payment. In fact, defendant made every effort to stymie Valeria's attempts to supply him with her information. As she parked and looked for her information, repeatedly assuring defendant she would provide it, defendant belligerently demanded money and then pulled her out of her car and threw her to the ground. Defendant did not indicate that he kept the receipt so he could seek payment for car repairs. To the contrary, defendant asserted that *he* left the scene of the accident without exchanging

---

speculated that the photographed key could have been a spare set of keys or a duplicate key. These arguments are forfeited "by raising [them] only in a footnote under an argument heading which gives no notice of the contention." (*People v. Crosswhite* (2002) 101 Cal.App.4th 494, 502, fn. 5, citing Cal. Rules of Court, former rule 15(a); see current rule 8.204(a)(1)(B) of the Cal. Rules of Court; see also *People v. Carroll* (2014) 222 Cal.App.4th 1406, 1412, fn. 5; *People v. Turner* (1994) 8 Cal.4th 137, 214, fn. 19.)

10

information because he was "upset" and "didn't want to carry it on." As there was no substantial evidence to support a claim-of-right instruction, trial counsel's failure to request it did not constitute ineffective assistance.

### 4. *Accident reconstruction testimony*

Finally, defendant argues that his counsel was ineffective for eliciting damaging testimony from law enforcement officers that the vehicle damage was not consistent with defendant's version of the accident. He contends these questions lacked foundation, produced improper expert testimony on accident reconstruction, and impeached defendant by negating his version of events. However, defendant does not cite to any testimony in the record to support his argument, nor does he cite to the prosecutor's purported characterization of defendant's credibility, and we have no obligation to do so ourselves. (Cal. Rules of Court, rule 8.204(a)(1)(C); *People v. Smith* (2015) 61 Cal.4th 18, 48.)

In any event, as defendant concedes, the cars' speeds and precise manner of impact were wholly irrelevant to the issues in this case. Further, the jury had ample *relevant* evidence to assess defendant's and Valeria's credibility, in view of their radically different versions of their post-accident encounter. It is therefore not reasonably probable that officer testimony about the speed and positioning of the cars when they hit would have impacted the jury's verdict.

### 5. *Additional ineffective assistance of counsel arguments*

Defendant argues his counsel was ineffective for several other reasons not specifically raised in his motion for new trial. The People first counter that defendant forfeited those claims by failing to raise them in his motion for new trial.

"A defendant who appeals from the denial of a new trial motion generally forfeits those claims not raised in the new trial motion. [Citation.]" (*People v. Carrasco* (2014) 59 Cal.4th 924, 981.) However, a defendant may raise an ineffective assistance of counsel claim for the first time on appeal. (*Id.* at p. 982, citing *Fosselman, supra*, 33

11

Cal.3d at p. 581.) As defendant here notes, the ineffective assistance of counsel claims in his new trial motion are related to his ineffective assistance arguments on appeal. Thus, it is unclear why he did not raise those arguments with the trial court. Nonetheless, we decline to resolve the question of forfeiture as we conclude his claims lack merit. (See *Carrasco, supra*, at pp. 981-982.)

a. *Detective Davison's testimony*

Relying again on *Torres*, defendant argues that his counsel was ineffective for eliciting improper expert testimony from Detective Davison, in which he attested that defendant's actions sounded like kidnapping. Specifically, as Detective Davison described his drive home from the incident with Valeria, defense counsel asked, "Did you mention anything about kidnapping in your conversation on the way home?" Detective Davison responded, "The actions she described to me sounded like kidnapping." Counsel asked, "And you told her that?" to which he responded, "I don't recall. It's possible."[4]

Defense counsel's closing argument indicates he could have had a rational tactical purpose for eliciting this testimony. Valeria did not mention that defendant dragged her a second time and instructed her to get in his car until after she spoke to Detective Davison. Defense counsel argued that Valeria's first description of the incident, which did not include defendant's attempt to force her into his car, was "the most accurate, the most reliable and exactly what happened in this case. It was before [ ] Valeria was influenced by [Detective] Davison on the ride home. . . . Valeria calls up the sheriff's department and says[,] 'Hey, I forgot to mention that he was trying to kidnap me.' Well, we know that that's already being influenced by the ride home with Detective Davison." Thus, defense counsel could have asked Detective Davison about kidnapping to support his theory that defendant did not actually try to force Valeria into his car; rather, Detective

---

**4** Valeria testified that Detective Davison did not say the incident sounded like kidnapping, nor did he ever mention kidnapping.

Davison planted the idea in Valeria's head. As the record discloses a possible rational tactical purpose for trial counsel's actions, defendant has not shown his counsel was ineffective.

    b.  *Jury instruction on the possession of recently stolen property*

  We also are not persuaded that defendant's counsel was ineffective for failing to request a jury instruction on the possession of recently stolen property. CALCRIM No. 376 instructs the jury, in relevant part, that if a defendant possesses recently stolen property, "you may not convict the defendant of robbery based on those facts alone. However, if you also find that supporting evidence tends to prove his guilt, then you may conclude that the evidence is sufficient to prove he committed robbery. [¶] *The supporting evidence need only be slight* and need not be enough, by itself, to prove guilt." (CALCRIM No. 376, italics added.) Defendant asserts that this instruction would have advised the jury that defendant's mere possession of the receipt was insufficient to prove defendant was guilty of robbery.

  Defendant makes little effort to establish prejudice, and we discern none. The evidence of defendant's guilt went well beyond the "slight" corroborating evidence required by CALCRIM No. 376. Defendant repeatedly demanded money from Valeria and grabbed her tote bag, which he rummaged through and kept as Valeria fled. Apart from her receipt, Valeria also never recovered her binder, tote bag, or keys. It is therefore not reasonably probable this instruction would have changed the jury's verdict.

    c.  *Jury instruction on Evidence Code section 412*

  We similarly reject defendant's argument that his counsel prejudicially erred by failing to request a jury instruction on Evidence Code section 412. This instruction would have advised the jury: "If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust." (Evid. Code, § 412.) Deputy Walker testified that one of his partners collected the items scattered on the ground, "filled out

13

the property form and had [Valeria] sign it." This property form was not included in the law enforcement report. Defendant argues that without the property form, the jury was forced to speculate as to whether the tote bag, car keys, or receipt were returned to Valeria.

Regardless of what the property form may have said, there is no dispute that Valeria's receipt was *actually* found in defendant's car and produced at trial, which provided the strongest evidence of Valeria's item in defendant's possession. Moreover, defendant did not show that the prosecution was in possession of, or had access to, the property form. We therefore cannot find counsel ineffective for failing to request an instruction based on this form. (See *People v. Marshall* (1996) 13 Cal.4th 799, 836-837, fn. 5 [counsel not ineffective for failing to request Evidence Code section 412 instruction where the defendant did not show the prosecution had access to stronger evidence].) As defendant has failed to establish prejudice, he cannot establish his counsel was ineffective.

### d.     *Denial of request for evidentiary hearing*

As an alternative to his arguments on the merits, defendant argues that the trial court committed reversable error by failing to conduct an evidentiary hearing on his new trial motion. He contends that without taking evidence, the trial court could not determine whether there were sufficient facts to support his claims of ineffective assistance of counsel, requiring reversal.[5] We disagree.

When considering a motion for new trial, a trial court's " 'only obligation is to " ' "make whatever inquiry is reasonably necessary" ' ' to resolve the matter." ' " (*Hoyt,*

---

[5]     Defendant requests remand so the trial court can conduct a *Marsden* hearing. (*People v. Marsden* (1970) 2 Cal.3d 118.) However, *Marsden* only allows the trial court to assess a defendant's request for substitution of court-appointed counsel, not whether he is entitled to a new trial based on ineffective assistance. (*Id*. at p. 23.)

*supra*, 8 Cal.5th at p. 957, quoting *People v. Mora and Rangel* (2018) 5 Cal.5th 442, 517.) There is no requirement that the trial court hold an evidentiary hearing on a new trial motion alleging ineffective assistance of counsel. (*Hoyt*, at p. 957.) We afford the trial judge's decision great weight and defer to his or her factfinding power. (*People v. Wallin, supra*, 124 Cal.App.3d at p. 483.)

The trial court here made a sufficient inquiry into defendant's motion. It received briefing from both parties. It held oral argument on the motion, during which defense counsel was able to fully articulate his contentions. While defendant's new counsel requested an evidentiary hearing to explore the origin of the car key photo and "inquire of defense counsel," an evidentiary hearing on these issues was unnecessary to resolve the motion. The trial court was able to discern a rational tactical purpose for defense counsel's decision regarding the car key photograph, finding the photograph was "essentially irrelevant" based on already available facts. The trial court resolved defendant's remaining arguments on grounds of lack of prejudice, which only required familiarity with the trial proceedings. It did not require an inquiry into defense counsel's actions or any additional factfinding. Defendant has provided no evidence that the trial court, which was in the best position to assess trial counsel's adequacy, failed to sufficiently do so. (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114 [trial court is presumed to follow the law absent evidence to the contrary].) We therefore find no error in the trial court's decision not to hold an evidentiary hearing.

II

*Jury Instruction on Citizen's Arrest*

Defendant claims the trial court erred by refusing to instruct the jury on his theory that he made a citizen's arrest by using reasonable force to ensure Valeria did not leave the scene of the accident. He insists the record contains substantial evidence to support this defense and that he was prejudiced by its exclusion. We are not persuaded.

15

During trial, defense counsel asked the trial court to include an instruction on citizen's arrest based on defendant's repeated statements to Valeria that she was trying to leave. The People argued there was insufficient evidence to support the instruction, and the trial court agreed that the instruction "would be inappropriate under the facts or evidence in this case."

Section 837 provides that a private person may arrest another "[f]or a public offense committed or attempted in his presence." Further, "[t]he person arrested may be subjected to such restraint as is reasonable for his arrest and detention." (§ 835; *Fosselman, supra*, 33 Cal.3d at p. 579.)

"A defendant is entitled to have the court instruct on a defense theory if it is supported by substantial evidence, i.e., if a reasonable jury could conclude the particular facts underlying the instruction existed. [Citations.]" (*People v. Sullivan* (1989) 215 Cal.App.3d 1446, 1450.) The duty extends to "every theory of the case supported by substantial evidence, including defenses that are not inconsistent with the defendant's theory of the case." (*People v. Montoya* (1994) 7 Cal.4th 1027, 1047, citing *People v. Flannel* (1979) 25 Cal.3d 668, 684-685.) "We review de novo a claim that the trial court failed to properly instruct the jury on the applicable principles of the law. [Citation.]" (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 850.)

Here, a citizen's arrest instruction was not supported by substantial evidence. During his interview, defendant did not claim that Valeria was trying to leave the scene of the accident, nor did he mention that he tried to restrain her or arrest her. Indeed, defendant admitted that he became so upset that *he* fled the scene before exchanging information. He also conceded he did not call the police and did not know why. Thus,

defendant's own version of events provides no evidence that Valeria attempted to commit a hit-and-run, or that defendant used reasonable force to effectuate her arrest.[6]

Valeria's account of the evening is similarly devoid of such evidence. Valeria testified that she remained at the scene to exchange information and did not drive away. When she did flee, she called 911. Ultimately, it was defendant, not Valeria, who Officer Wood recommended should be charged with a hit-and-run. Thus, there is no evidence that Valeria attempted a hit-and-run, or any other public offense. There also is no evidence defendant used reasonable force to effectuate an arrest, given his violence towards Valeria and her resulting injuries. As the instruction is not supported by substantial evidence, we find no error in the trial court's exclusion.

III

*Sufficiency of the Evidence for Robbery*

Defendant next asserts there was insufficient evidence to support his conviction for second degree robbery. He insists that the only item arguably found in defendant's possession was Valeria's receipt, the mere possession of which was insufficient to support the verdict. We conclude there was sufficient evidence from which a reasonable trier of fact could find that defendant had committed robbery.

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a

---

[6] Defendant makes much of the fact that Valeria's car was pointed in the opposite direction from which she came, suggesting that the car's position indicates Valeria was trying to leave. However, Valeria testified that she turned her car around to park behind him and safely exchange information. Although Deputy Walker testified Valeria told her she turned her car around to go to a nearby relative's house, there is no evidence that she told defendant she was driving away or that she actually tried to drive away.

17

reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) We do not reassess the credibility of witnesses, and we draw all inferences from the evidence that supports the jury's verdict. (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382.) Unless it is physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) If substantial evidence supports the verdict, we defer to the trier of fact and do not substitute our evaluation of witness credibility for that of the jury. (*People v. Snow* (2003) 30 Cal.4th 43, 66.) If the record supports the jury's findings, our belief that the circumstances might also reasonably support a contrary finding does not warrant a reversal of judgment. (*People v. Abilez* (2007) 41 Cal.4th 472, 504.)

"Robbery is defined in section 211 as 'the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.' " (*People v. Scott* (2009) 45 Cal.4th 743, 749.) It requires an intent to steal, defined as the intent to permanently deprive the owner of property. (*People v. Guerra* (1985) 40 Cal.3d 377, 385.) "[I]f the elements of robbery are proved, the value of the taken property is irrelevant." (*People v. Clark* (2011) 52 Cal.4th 856, 946.)

The evidence discloses that defendant pulled up next to Valeria, angrily shouted at her, and aggressively and persistently demanded money. He reached into his pocket and made a jabbing motion as if he had a knife. He pulled Valeria out of her car, threw her on the ground, and grabbed her tote bag, rifling through it while she cried. While still holding the tote bag, defendant dragged Valeria to his car and demanded she get inside. Valeria fled in fear. When Valeria escaped into the orchard, she left her keys in the car and did not know where her tote bag was. Neither her tote bag, nor the binder she kept in the tote bag, were ever found. Her keys also were missing and never returned to her. A receipt from Valeria's binder was found in defendant's car. On this record, a reasonable

18

trier of fact could find that defendant took Valeria's tote bag, binder, receipt, and/or keys from her immediate presence, against her will, by force or fear, with the intent to steal.

Despite this abundance of evidence, defendant erroneously maintains that everything was returned to Valeria except the receipt, which he argues could have been in defendant's car for any number of innocent reasons. Defendant's argument ignores Valeria's testimony that defendant snatched her tote bag and she never recovered it, or her binder or keys. Moreover, even if the circumstances of the receipt in defendant's car could be reasonably reconciled with a contrary finding, this would not warrant reversal where, as here, the circumstances reasonably support the jury's verdict. (*People v. Perez* (1992) 2 Cal.4th 1117, 1124.)

IV

*References to Valeria as "Victim"*

Finally, defendant argues the trial court prejudicially erred when it allowed the prosecutor and witnesses to refer to Valeria as the "victim." We find no error.[7]

Prior to trial, the trial court denied defendant's motion in limine to preclude witnesses from referring to Valeria as the "victim." As a result, the prosecutor, Officer Wood, and Deputy Walker referred to Valeria as the "victim" several times during the trial. Relying primarily on *People v. Williams* (1860) 17 Cal. 142 (*Williams*), defendant argues that the repeated references to Valeria as the victim subtly manipulated the jury

---

[7] Defendant's related argument that the trial court erred by allowing the prosecutor to refer to defendant as the "suspect" is forfeited. Defendant's motion in limine only sought to exclude any reference to the term "victim." Defendant also did not raise this issue during oral argument on the motion in limine, nor did he object to the prosecutor's use of the term "suspect's vehicle" during trial. Further, most of defendant's citations to purported uses of the term "suspect" refer instead to uses of the term "victim." Defendant's failure to object or seek admonition forfeits his claim on appeal. (*People v. Montes* (2014) 58 Cal.4th 809, 890.)

19

into viewing Valeria as the victim of defendant's crimes, thereby eroding defendant's presumption of innocence.

In *Williams*, the defendant argued that a jury instruction referring to the deceased subject of the case as a "victim" prejudiced the jury against him in his murder trial. (*Williams, supra*, 17 Cal. at p. 147.) While our Supreme Court did not reverse the judgment on these grounds, it cautioned that "[t]he word *victim*, in the connection in which it appears, is an unguarded expression, calculated, though doubtless unintentionally, to create prejudice against the accused. . . . The Court should not, directly or indirectly, assume the guilt of the accused, nor employ equivocal phrases which may leave such an impression." (*Ibid*.) Although the Supreme Court was unwilling to "criticize language very closely in order to reverse a judgment of this sort," it emphasized that in the face of conflicting evidence, "an equivocal expression coming from the Judge, may be fatal to the prisoner." (*Ibid.*) Thus, *Williams* underscored the idea that the trial court, as a neutral body, must be cautious about indirectly influencing a jury through its use of language, and specifically, use of the term "victim." (*Ibid.*)

Defendant also cites to the more closely analogous *People v. Wolfe* (1954) 42 Cal.2d 663, in which the defendant and prosecutor referred to the deceased as "the victim" during the defendant's cross-examination. (*Id.* at p. 666.) The defendant argued that the prosecutor's use of the term "victim" assumed the defendant's guilt and created reversible error, but our Supreme Court disagreed. (*Ibid*.) In doing so, it distinguished *Williams* on the grounds that in *Wolfe* it was the prosecutor, rather than the trial court, who referred to the deceased as the victim. (*Wolfe, supra*, at p. 666.) It further noted the

jury was properly instructed that it was the sole judge of the value and effect of evidence and also instructed on the reasonable doubt standard. (*Ibid.*)[8]

Here, as in *Wolfe*, the trial court did not refer to Valeria as a "victim." Rather, the prosecutor and two testifying officers used the term. The prosecutor, as an advocate who sought to prove Valeria was a victim of defendant's crimes, would naturally refer to Valeria as a victim, and the jury would not expect the prosecutor to use neutral language. Thus, consistent with *Wolfe*, the prosecutor's use of "victim" did not create the risk of prejudice cautioned by *Williams*. Similarly, although the officers were witnesses and not advocates, they also were not dispassionate arbiters like the trial court, whose use of language might improperly persuade a jury looking to the trial court for impartial guidance. We therefore find no error in the denial of defendant's motion in limine.

Even assuming for argument's sake there was error, it would be harmless under any standard. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711] [beyond a reasonable doubt]; *People v. Watson* (1956) 46 Cal.2d 818, 836-837 [reasonably probable].) We are convinced beyond a reasonable doubt the prosecutor's and officers' use of the term "victim" did not affect the jury's verdicts. Valeria testified in compelling detail about defendant's robbery and attempted kidnapping. Further, the trial court instructed the jury that it "must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial," that defendant was presumed innocent, and that the prosecution must prove the defendant guilty beyond a reasonable doubt. (CALCRIM No. 220.) They also were instructed that they "may believe all, part, or none of any witness's testimony." (CALCRIM No. 226.) Finally, the jury was instructed that nothing "the attorneys say is evidence," the attorney's "questions

---

[8]     Defendant also cites to a number of non-California authorities to support his argument. However, out of state authorities are not binding on California courts. (*People v. Montes, supra*, 58 Cal.4th at p. 884.)

21

are not evidence," and "[d]o not assume that something is true just because one of the attorneys asked a question that suggested it was true." (CALCRIM No. 222.) We presume the jurors understood and followed all instructions. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 447.)[9]

## DISPOSITION

The judgment is affirmed.

              KRAUSE       , J.

We concur:

     RAYE       , P. J.

     HULL       , J.

---

[9]     We need not address defendant's passing arguments set forth in his "Statement of Facts" that (1) the trial court erroneously declined to allow an expert to testify on posttraumatic stress disorder; (2) the trial court and prosecution "treated Valeria in a manner which would unmistakably suggest to the jury that she had been victimized and traumatized by [defendant]," such as referring to her by her first name and permitting her to identify defendant through a photograph rather than looking at him directly; and (3) defense counsel undermined his own arguments by repeatedly arguing defendant's conduct was "deplorable" and that he traumatized Valeria. These assertions are not separately raised or presented under a discrete heading, nor are they supported by citation of authority as required. (Cal. Rules of Court, rule 8.204(a)(1)(B); *People v. Carroll, supra*, 222 Cal.App.4th at p. 1412, fn. 5.)